MARY B. MCDONALD, APPELLEE, v. LINCOLN COUNTY, APPELLANT.

4 N. W. (2d) 903

FILED JULY 10, 1942. No. 30917.

*S. S. Diedrichs, R. H. Beatty* and *Milton C. Murphy,* for appellant.

*Beeler, Crosby & Baskins, Robert B. Crosby* and *Horace E. Crosby, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

The former opinion in this case is reported in 139 Neb. 188, 296 N. W. 892. Following an argument for rehearing, we have arrived at a different conclusion than that announced in the former opinion.

For the purposes of this opinion we adopt and quote the statement of the case from the former opinion as follows:

"This action is an appeal from a judgment of the district court for Lincoln county, Nebraska, in favor of Mary B. McDonald and against the county of Lincoln for $12,271.64, with interest and costs made and entered by it on an appeal from the disallowance by the county board of that county of a claim for a refund of money paid to the county treasurer for a tax sale certificate and subsequent taxes paid by Mary

B. McDonald, as owner thereof, on the Masonic Temple Craft building in North Platte.

"The material facts are not in dispute. It appears that the tax sale certificate was issued to the appellee, Mary B. McDonald, on November 3, 1930, and the payments of the taxes subsequently assessed against the premises were made when and in the amounts as alleged in her petition. The original petition was filed on June 19, 1935, by Mary B. McDonald in the district court for Lincoln county in a case wherein she was plaintiff and the Masonic Temple Craft of North Platte, Nebraska, et al., were defendants, the object and prayer of which were the foreclosure of the lien of the tax sale certificate and of subsequent taxes paid by the plaintiff. Service of summons issued thereon was made on all parties on June 20, 1935. After trial on the merits on September 23, 1936, a decree of foreclosure and sale was awarded the plaintiff in the sum of $7,433.65 and interest, as provided by law. An appeal was thereupon presented from this judgment of the district court to the supreme court, wherein, after due hearing, judgment was entered directing that the judgment of the district court, made and entered on September 23, 1936, be reversed and the plaintiff's action be dismissed, and mandate so directing was duly issued from the supreme court on November 7, 1938; and such mandate was received and filed in the district court for Lincoln county on November 8, 1938. See *McDonald v. Masonic Temple Craft*, 133 Neb. 589, 276 N. W. 176; *Id.*, 135 Neb. 48, 280 N. W. 275.

"Thereafter on December 10, 1938, Mary B. McDonald filed with the county board of Lincoln county, Nebraska, a claim in writing for a refund of the moneys thus paid by her to the county treasurer of Lincoln county. This claim was disallowed in full on December 19, 1938. An appeal was prosecuted by Mary B. McDonald from this disallowance to the district court for Lincoln county. Her petition on appeal, in proper form, set forth the facts of the transaction and the adjudication by the supreme court of the state of Nebraska of the invalidity of the taxes in suit, with appropriate prayer.

"The answer may be summarized as an admission of the levy of the taxes in suit, the purchase by plaintiff at tax sale, and subsequent payment of taxes as alleged in the petition, but it alleges that the major part of these taxes were levied by other municipal subdivisions of the state of Nebraska (the city and school district of North Platte), and that the proceeds so collected by the county treasurer were by him distributed to such municipal subdivisions according to their respective interests and rights thereto, and are not now in the hands of the county treasurer. Further, this answer admits the entry of judgment determining the illegality of the taxes in suit, and alleges that Lincoln county was not a party in that proceeding, and, in addition, pleads that plaintiff's action was not instituted within five years from the date of issuance of tax sale certificate, and therefore is barred.

"To this answer, a reply in the nature of a general denial was filed.

"The result of the trial on the merits in the district court was the judgment referred to at the commencement of this opinion. From the order of the trial court overruling its motion for a new trial, the defendant county appeals."

On this record the appellant contended, and in the former opinion it was held, that the plaintiff was barred of her action by the limitation contained in section 77-2049, Comp. St. 1929, as follows:

"If the owner of any tax sale certificate shall fail or neglect to demand a deed thereon, or to commence an action for the foreclosure of the same within five years from the date of the sale, such tax sale certificate shall cease to be valid or of any force or effect whatever, and the real estate covered thereby shall be forever released and discharged from the lien of all taxes for which the same was sold. And it is hereby made the duty of each and every county treasurer of the state of Nebraska to enter on the tax sale records of his or her office a cancelation of all tax sales on which five years have elapsed since date of sale, with date of entry affixed, in language substantially as follows: 'Canceled by section 6569, Revised Statutes of Nebraska for 1913 (77-

2049).' No county treasurer or bonded abstractor shall be held responsible on his bond or otherwise on account of such entry being made in accordance with this section. All land covered by tax sales that comes within the provisions of this act shall from the time of this entry be considered to stand of record as though no tax sale had ever been made."

In this connection we have arrived at the conclusion that the former opinion is incorrect, and that section 77-2054, Comp. St. 1929, is controlling with the application of the general statute of limitations applying in the determination of the time within which plaintiff was required to bring action to recover back money paid on a tax sale which had been declared void by a court of competent jurisdiction. The section is the following:

"Whenever, for any reason, real estate has been sold or shall hereafter be sold for the payment of any tax or special assessment levied by any county, municipality, drainage district or other political subdivision of the state, and it shall thereafter be determined by a court of competent jurisdiction that said sale was void, it shall be the duty of said county, municipality, drainage district, or other political subdivision of the state which levied the tax or special assessment to hold said purchaser harmless by paying him the amount of principal paid by him at the sale with interest thereon at the rate of 6% *per annum* from the date of sale."

It will be noted that under the plain and unambiguous terms of section 77-2049, the only subject under legislative contemplation and consideration was the limitation upon the preservation of a *valid tax lien obtained by purchase of a tax sale certificate*. Two methods of preserving the lien are provided. They are, either demand for deed, or action to foreclose. The limitation of this section does not apply directly or indirectly or by implication to a *void tax* or any other subject other than *valid tax* lien. Moreover, until by the enactment of section 77-2054 in 1915 (Laws 1915, ch. 228, sec. 2), there was no statutory provision for the recovery back of money paid for void tax certificate unless the

certificate for void tax was the result of mistake or wrongful act of a treasurer or other officer. Comp. St. 1929, sec. 77-2030.

An examination of the statutes discloses that section 77-2049 is part of an act adopted in 1903 (Laws 1903, ch. 73, sec. 241), whereas section 77-2054 is part of an act which was adopted in 1915 and without any reference to the limitation contained in section 77-2049. As the language plainly imports, the limitation of action under section 77-2054, depends upon two things, one, the accrual of the right of action, and, two, the general statute of limitations. Under the specific terms of this section the right of action does not, cannot, accrue *until it shall be determined by a court of competent jurisdiction that the tax sale which is the basis of the certificate is void.*

It cannot be that the legislature, in the adoption of section 77-2054, contemplated the granting of a right and the cutting off of the remedy to secure the right before the right ever accrued, yet, that is the thing for which the defendant contends, and the effect of the former opinion in this case.

The tax sale here was not determined to be *void* by *a court of competent jurisdiction* until it was so held in *McDonald v. Masonic Temple Craft,* 135 Neb. 48, 280 N. W. 275, in 1938. Within three months the plaintiff had her action on file in the district court of Lincoln county.

It is urged that, by reason of the legislative declaration in the act of which section 77-2054 is a part, the act is cumulative and not amendatory, that the limitation of section 77-2049 must be read into section 77-2054. Cumulative within the meaning of the act as applied to the plaintiff means only that the legislature created a right and remedy which did not previously exist. 25 C. J. S. 27. The right created was to recover back taxes paid by a tax purchaser in case the taxes were void for reasons other than those set forth in section 77-2030. The remedy is by action instituted after declaration that the tax is void by a court of competent jurisdiction. Can it be that the legislature intended to create a right and a corresponding remedy without at the same time

allowing a party an opportunity to pursue the remedy and protect the right? This obviously could not have been the legislative intent.

It may be that, if this statute had the effect of providing an alternative remedy for the enforcement of a right in being and was silent as to the time when action could be instituted, then the limitation upon the original action would be properly applicable, but that is not the situation here. Section 77-2054 creates a right which did not previously exist and it states the time when the action accrues, and, further, is silent as to limitation.

No cases have been cited under the title of cumulative right or remedy, or any other title, and we think there are none, which hold under such circumstances as these that a statute of limitations in the act of which the later act is cumulative, which limitation bears no relation to the new right or remedy, may bar a recovery for the new right before right of action comes into being.

Let us see what was the probable reason for the adoption of section 77-2054. From 1903 to 1915 the tax purchaser who obtained a certificate for a tax which was void was without a remedy, unless it was void because of mistake or wrongful act of the treasurer or other officer. Comp. St. 1929, sec. 77-2030. Such a situation was not only unfair and unjust to the tax purchaser, but it had the obvious effect of discouraging purchases of certificates for delinquent taxes because of the peril involved and, of course, this caused, for long periods of time, properties to be nonproductive of taxes to the injury of the tax-using political bodies. No doubt it was to correct this situation that section 77-2054 was adopted by the legislature. Clearly the legislature intended by the act to tell purchasers of tax certificates that they no longer were required to purchase delinquent tax sale certificates at their peril. Likewise clearly it meant to tell them that they might recover money back, with interest at 6 per cent. per annum, which had been paid for void tax certificates, but that before they might do so and as a condition precedent to that right there must be an *adjudication by a*

*court of competent jurisdiction* that the tax is void.

If, as contended in the former opinion, from the fact that the legislature declared that the act of which section 77-2054 is a part is cumulative, the limitation of 77-2049 must be applied to section 77-2054, then the only logical conclusion would be a holding that the plaintiff had five years from the date that her tax certificates were held void by a court of competent jurisdiction within which to bring action to recover the money paid out, five years being the period of limitation named in section 77-2049. We think, however, that the better rule as to limitation is the one set forth in our general statutes of limitation as follows: "An action for relief not hereinbefore provided for can only be brought within four years after the cause of action shall have accrued." Comp. St. 1929, sec. 20-212.

In support of the interpretation placed on section 77-2054 in the former opinion, certain previous decisions of this court are cited. We will consider them in the order that they made their appearance. The first is *Gibson v. Dawes County,* 129 Neb. 706, 262 N. W. 671. In the opinion in that case appears the following: "The liability of a county for a refund of taxes paid by the purchaser of real estate at a county treasurer's sale for delinquent taxes, where the title fails, is statutory and does not exist at common law. * * * A petition for such a refund is demurrable, if it does not state facts sufficient to show the statutory conditions which make the county liable. * * * There are two sections of statute imposing upon a county the duty to hold the purchaser of real estate at a tax sale harmless by refunding the amount of the payment made by him to the county treasurer, where the title fails." The two sections referred to are 77-2030 and 77-2054, Comp. St. 1929, and are quoted in the opinion.

The appeal was from an order sustaining a general demurrer to the petition. This court said on the question of whether or not a cause of action had been stated under section 77-2030: "The petition for a refund in the present instance does not contain specific allegations of fact showing

that the county treasurer or any other officer by mistake or wrongful act sold the land on which no tax was due at the time or that the land was sold in consequence of error in describing it in the tax receipt, a mere conclusion by the pleader not being sufficient. It follows, therefore, that the petition is not sufficient to show, when attacked by demurrer, that plaintiff is entitled to relief under the section first quoted."

As to section 77-2054 the opinion states: "The decree in the former action to foreclose the tax sale certificate is attached to the petition herein and adjudges that the taxes for the years 1920, 1921 and 1922 were liens on the entire tract of 320 acres; that subsequent taxes paid by the holder of the tax sale certificate for the years 1923 to 1926, both inclusive, were valid liens on 18/320 of the land and invalid as to 302/320 thereof. The former decree, being pleaded herein in the petition as part of plaintiff's cause of action, prevails over allegations which the decree contradicts, if any. * * * From the standpoint of the demurrer and of invulnerable pleading, therefore, *the petition does not show that the taxes which plaintiff seeks to recover back were all void or that his tax sale certificate was invalid.*" (Italics ours.) In other words, the opinion points out that the plaintiff had not stated a cause of action under section 77-2054, since he had not shown that a tax certificate had been declared void by a court of competent jurisdiction. We think that for this reason the further discussion in the opinion relative to the statute of limitations is *dicta* and should not be considered as a precedent here, and if it may be considered as precedent it should be and is expressly overruled.

In most, if not all, respects, the same situation is presented in *Wetzel v. Dawes County,* 129 Neb. 711, 262 N. W. 674, as in *Gibson v. Dawes County, supra.* What we have said there with regard to the statute of limitations we consider equally applicable here.

The case of *Kennedy v. Dawes County,* 130 Neb. 227, 264 N. W. 452, is very similar to the two cases previously discussed and in it, without any very specific recital of facts

and circumstances, a like conclusion is arrived at. In this case as in the other two the language of section 77-2054, which makes clear that the cause of action does not arise until there shall have been a declaration by a court of competent jurisdiction that the tax was void, seems never to have been considered.

On the question of when the statute began to run the case of *Monteith v. Alpha High School District*, 125 Neb. 665, 251 N. W. 661, has been cited. This case has no bearing whatever. The fourth paragraph of the syllabus in that case is as follows: "As between a taxpayer and a school district or county, from which a recovery is sought, the statute of limitations begins to run from the time of the payment of the tax, and it is not postponed until the illegality of the tax has been judicially decided." Obviously and specifically this court had in mind when that pronouncement was made the limitation contained in subdivision "second" of section 77-1923, Comp. St. 1929, the applicable portion of which is the following: "If such person claim the tax or any part thereof to be invalid for the reason that it was levied or assessed for an illegal or unauthorized purpose, or for any other reason except as hereinbefore set forth, when he shall have paid the same to the treasurer, or other proper authority, in all respects as though the same was legal and valid, he may, at any time within thirty days after such payment, demand the same in writing * * * and if the same shall not be refunded within ninety days thereafter, may sue * * * ." The holding in that case was that, the plaintiff not having brought himself within the conditions and limitations of this particular section of the statute, and not having shown that he was otherwise entitled to relief, the demurrer to the petition was properly sustained.

On the question of whether or not the entire void tax is recoverable against the county, since portions of it were taxes levied for the benefit of the city of North Platte and the school district, we adopt the view that the county, under rules of interpretation long established, is liable for all taxes which entered into the sum paid by the taxpayer without

regard for whose benefit they were levied. *Roberts v. Adams County,* 18 Neb. 471, 25 N. W. 726; *Roberts v. Adams County,* 20 Neb. 409, 30 N. W. 405; *Richardson County v. Hull,* 24 Neb. 536, 39 N. W. 608; *Norris v. Burt County,* 56 Neb. 295, 76 N. W. 551.

Furthermore section 77-2054, Comp. St. 1929, makes it clear that the liability is that of the political subdivision which levied the tax. The political subdivision which levied the entire tax in question was Lincoln county, Nebraska, through its county board of equalization or its county board pursuant to the requirements of section 77-1801, Comp. St. 1929. The portion of the section of importance here is the following:

"The county board of equalization shall adjourn from time to time until the action of the state board of equalization and assessment shall have been had and certified to the county clerk, and, on the last day of sitting as a board of equalization, the county board shall levy the necessary taxes for the current year, including all county, township, city, school district, precinct, village, road district and other taxes required by law to be certified to the county clerk and levied by the county board * * * ."

It is not pointed out that any of the taxes paid by plaintiff were not certified either to the county clerk or the county board.

In so far as the city of North Platte is concerned, it being a city of not less than 5,000 and not more than 25,000 population, section 16-702, Comp. St. 1929, required that its levy should be certified to the county clerk for levy by the county agreeable to section 77-1801.

Under the specific provisions of section 79-2522, Comp. St. 1929, the school district is required to certify its estimate to the county board, and the board is required to levy and collect the tax.

Section 26-259, Comp. St. 1929, provides for certification by the township and levy of taxes for township purposes by the county board.

As to precincts taxation is a matter of allocation by the

supervisor or county clerk after equalization by the county and state boards of equalization in the manner provided by sections 77-1804 and 77-1805 as these sections have been amended, the levy having been made by the county board.

As to road districts all funds to be raised for construction and maintenance by taxation are dependent upon levy by the county board. Comp. St. 1929, secs. 39-201, 39-202, 39-203, 39-210, 39-221 and 39-222.

It being clear that the ultimate levies which were the basis of the payments of taxes made by the plaintiff were made by the political subdivision, the county, and properly so under section 77-1801, the action was properly maintainable against that political subdivision.

It is urged in argument that, since the county was not made a party to the tax foreclosure action wherein the taxes were adjudged to be void, such judgment is not binding and has no force and effect as against the county. This proposition requires no consideration here. No such defense was pleaded. Certainly, if the defendant desired that this matter should be given consideration by the court, attention should have been called to it by appropriate pleading.

The former opinion in this case is hereby set aside. For the reasons herein set out, the judgment of the district court is hereby

AFFIRMED.

ROSE, EBERLY AND MESSMORE, JJ., dissenting.

Having an abiding conviction that the judgment of the district court is without any foundation whatever in fact, law or justice, we solemnly protest against the adoption of the opinion directing the affirmance of it.

The claim resulting in the affirmed judgment against Lincoln county for $12,271.64, is a demand for a refund of void taxes levied on the Masonic Temple Craft building and lots in North Platte, the ostensible liens of which were purchased by plaintiff with money paid by her to the county treasurer.

The claim of plaintiff for a refund of the void taxes included $4,124.56 levied by the school district of North Platte

and certified to the county treasurer for collection. Comp. St. 1929, sec. 79-2522. The county did not levy these void school taxes or receive the money paid by plaintiff therefor to the county treasurer.

The claim of plaintiff for a refund of the void taxes included also $3,203.51 levied by the city of North Platte against the same property and certified to the county treasurer for collection. Comp. St. 1929, sec. 16-702. The county did not levy these void city taxes or receive the money paid by plaintiff therefor to the county treasurer. The county treasurer, as trustee, received from plaintiff the school taxes for the school district and the city taxes for the city and he was required by statute to hold them for refund to plaintiff, pending litigation, if found to be void. Comp. St. 1929, sec. 77-1705.

While the litigation to test the validity of the taxes levied against the Masonic property was pending, the county treasurer unlawfully turned over to the school district the money received by him from plaintiff for the school taxes and to the city the money received by him for city taxes. It was his statutory duty to retain these funds in his hands pending litigation for the purpose of returning them to plaintiff if the taxes should be adjudged void. Comp. St. 1929, sec. 77-1705. Since the county did not levy these void taxes or receive payment therefor from plaintiff, it cannot refund what it never received and is not liable to her therefor. By violation of law the person holding the office of county treasurer could not create an obligation of the county. The failure of the treasurer, as trustee, to retain these trust funds pending litigation was not the act of the county but the wrong and the trespass of the individual occupying the office of county treasurer. This is the law of Nebraska. In a former case the rule was stated thus:

"In dealing with taxes certified by city authorities to the county clerk, neither the county clerk nor county treasurer acts as agent of the county." *Kelley v. Gage County,* 67 Neb. 6, 93 N. W. 194. See, also, *School District No. 2 v. Saline County,* 9 Neb. 403, 2 N. W. 877; *Lancaster County v.*

*State,* 74 Neb. 211, 215, 104 N. W. 187, 107 N. W. 388.

The district court and the supreme court were in law as powerless as the county treasurer to bind the county for a refund having no existence in fact and never having been authorized by law. Citizens having their residences and their taxable property in Lincoln county outside the school district and outside the city of North Platte were not benefited by the trust funds received by the county treasurer from plaintiff and illegally turned over to the school district and to the city. Enforcement of the erroneously affirmed judgment against the county will result in the taxation of property outside the school district and outside the city to pay the debts of the school district and to pay the debts of the city, in plain violation of the due-process clause of the Fourteenth Amendment of the Constitution of the United States.

The lawmakers themselves were without power to authorize taxation in Lincoln county outside the school district and outside the city to be applied alone to the debts of the city and of the school district. The law has been stated as follows:

"Should the legislature order that money be raised by one district and paid to another district, to be used for the sole benefit of that other district, that would be an exaction of money for the benefit of others than those who are taxed and clearly beyond what could be justified as taxation. 26 R. C. L. 72, sec. 51." *State v. Board of County Commissioners,* 109 Neb. 35, 189 N. W. 639.

The affirmed judgment not only requires unlawful taxation, but is a sentence imposed on property owners in Lincoln county outside the school district and outside the city, without indictment, notice or day in court, to pay fines or tribute for the benefit of the school district and the city. 1 Cooley, Taxation (4th ed.) sec. 186; 26 R. C. L. 72, sec. 51; *Robinson v. City of Norfolk,* 108 Va. 14, 60 S. E. 762; *Sharpless v. Mayor of Philadelphia,* 21 Pa. St. 147, 168.

In addition, the entire claim of plaintiff for a refund was outlawed by the five-year statute of limitations inserted by

the legislature in the revenue law of Nebraska. The validity of these taxes was in litigation August 30, 1930, with the public records charging plaintiff with notice thereof when speculating in delinquent taxes. The claim of plaintiff for a refund was based on a tax sale certificate for delinquent taxes issued to her November 3, 1930, and on payment of subsequent taxes on the same Masonic property. All were adjudged void before the present action was commenced. *North Platte Lodge, B. P. O. E., v. Board of Equalization,* 125 Neb. 841, 252 N. W. 313; *Masonic Temple Craft v. Board of Equalization,* 129 Neb. 293, 261 N. W. 569; *Masonic Temple Craft v. Board of Equalization,* 129 Neb. 827, 263 N. W. 150; *McDonald v. Masonic Temple Craft,* 133 Neb. 589, 276 N. W. 176; *McDonald v. Masonic Temple Craft,* 135 Neb. 48, 280 N. W. 275.

The claim of plaintiff for a refund was not presented to the county board for allowance until December 10, 1938, a period of more than five years from the date of the tax sale certificate. The claim for a refund was therefore barred by the revenue law which declares:

"If the owner of any tax sale certificate shall fail or neglect to demand a deed thereon, or to commence an action for the foreclosure of the same within five years from the date of the sale, such tax sale certificate shall cease to be valid or of any force or effect whatever, and the real estate covered thereby shall be forever released and discharged from the lien of all taxes for which the same was sold." Comp. St. 1929, sec. 77-2049.

By unanimous opinion the supreme court ruled pursuant to this statute as follows:

"A claim or an action against a county by the holder of a tax sale certificate for a refund of taxes assessed against the real estate sold is barred by the statute of limitations, unless presented in some form to the county for allowance within five years from the date of the sale." *Gibson v. Dawes County,* 129 Neb. 706, 262 N. W. 671.

This was unanimously recognized as law and cited in *Wetzel v. Dawes County,* 129 Neb. 711, 262 N. W. 674, in *Ken-*

*nedy v. Dawes County,* 130 Neb. 227, 264 N. W. 452, and in *McDonald v. Lincoln County,* 139 Neb. 188, 296 N. W. 892. Since the plain letter and spirit of the five-year revenue statute of limitations was thus enforced as enacted, the legislature has been in session from time to time without changing it and has thus permitted it to remain as the true expression of the legislative will.

Moreover, a supreme court ruling reads as follows:

"Section 77-2030, Comp. St. 1929, does not require a foreclosure action to be begun or a demand for a deed to be made on a void tax sale certificate before instituting proceedings before the board of county commissioners for reimbursement, provided the proceedings are begun within five years from the date of the certificate." *Farm Investment Co. v. Scotts Bluff County,* 125 Neb. 582, 251 N. W. 115.

It requires more legislation than the statutes contain to justify affirmance of the judgment requiring Lincoln county to refund to plaintiff money it never received and to pay a claim barred by the five-year revenue statute of limitations. On the undisputed facts and the law applicable thereto, we cannot allow the opinion of the majority to go unchallenged. The judgment of the district court should be reversed and the action dismissed.